# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| WILLIAM WITTMAN and AMBER BELLAMY, for themselves and all others similarly situated, | CV 15-105-BLG-SPW-CSO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |
| vs. | |
| CB1, INC., | |
| Defendant. | |

Plaintiffs William Wittman and Amber Bellamy ("Plaintiffs") bring this putative class action against CB1, Inc. ("CB1") alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and the Montana Consumer Protection Act ("MCPA"), MCA §§ 30-14-101 *et seq.*

Now pending is CB1's motion to dismiss the complaint and to strike class allegations. *ECF No. 10.*[1] The Court heard oral argument on the motion on April 7, 2016. Having considered the parties'

---

[1] "*ECF No.*" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation, § 10.8.3.* References to page numbers are to those assigned by ECF.

arguments and submissions, and the applicable law, the Court

recommends as follows.

I.    **BACKGROUND**

The following facts are alleged in the Complaint and are, for

purposes of considering the pending motion to dismiss, assumed to be

true.

Plaintiffs William Wittman and Amber Bellamy incurred medical

bills at the Billings Clinic for treatment of various health issues and the

bills were placed for collection with CB1.  *ECF No. 1* at 3.  CB1 sent

requests for payment to each Plaintiff and the requests indicated that

CB1 would collect a surcharge of 2.5% if the debt were paid with a debit

or credit card.  *Id.*  Each Plaintiff made payments to CB1 with a debit

card at CB1's office in Billings, Montana, and CB1 added the 2.5%

surcharge to each Plaintiff's bill.  *Id.* at 2–3.

The Complaint further alleges that members of the putative class:

(1) incurred consumer debt that was placed with CB1 for collection; and

(2) received requests for payment from CB1 indicating that it would

collect a 2.5% surcharge for use of a debit or credit card, and that some

paid that fee.  *Id.* 4.  Plaintiffs allege that, on information and belief,

CB1 agreed with card issuers not to charge a fee to consumers for using a credit card. *Id.*

## II. <u>PARTIES' ARGUMENTS</u>

CB1 argues that the Court should dismiss the Complaint for failure to state a legally cognizable claim under Rule 12(b)(6).[2] *ECF No. 10* at 2. It further argues that the Court should strike paragraphs 43-49 the Complaint, pursuant to Rule 12(f), on the grounds that Plaintiffs cannot represent a class of individuals under the MCPA. *Id.*

CB1 argues that the FDCPA violation, alleged under section 1692f(1) of the Act, should be dismissed. It argues that: (1) the 2.5% fee charged for payments made by debit or credit card was an optional transaction fee and is permitted by the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, *ECF No. 11* at 11–12; (2) the Plaintiffs agreed to pay all collection expenses incurred in the collection of Plaintiffs' medical bills, *id.* at 13; (3) the fee is not incidental to Plaintiffs' principal debt, *id.* at 14; (4) the fee could have been easily avoided by paying with another method; *id.* at 14–15; (5) Plaintiffs

---

[2] References to the rules are to the Federal Rules of Civil Procedure unless otherwise noted.

never made the threshold showing that the fee was unfair or unconscionable, or that they suffered substantial injury, *id.* at 15–16; and (6) Plaintiffs were not unfairly steered towards making a debit card payment. *Id.* CB1 argues that, for those reasons, the section 1692f(1) claim should be dismissed.

Next, CB1 argues that the FDCPA violation under section 1692e(2)(B) should be dismissed because: (1) it hinges on a violation under section 1692f(1), and without that violation there could be no misrepresentation that it was entitled to the fee it requested; and (2) it lawfully represented that it was entitled to the 2.5% fee because it was permitted by statute and authorized by agreement. *Id.* at 19.

Under the MCPA, CB1 argues that it "merely provided notice of an optional 2.5% transaction fee, which was permitted by statute and authorized by agreement." *Id.* at 22. It argues that this cannot be considered an unfair or deceptive practice, nor do Plaintiffs allege the fee was inherently unfair or deceptive. *Id.* at 21–22.

Finally, CB1 argues that Plaintiffs cannot represent a class of similarly situated persons under the MCPA because it is expressly prohibited by the statute itself. *Id.* at 23. It argues that because the

claims must be governed by state law, the Court should strike paragraphs 43 through 49 of the Complaint and dismiss the complaint in its entirety, without leave to amend. *Id.* at 24.

Plaintiffs respond that the 2.5% fee violates section 1692f(1) of the FDCPA because the fee is neither expressly permitted nor prohibited by law and was not agreed to by the parties. *ECF No. 17* at 6–7. They argue that: (1) the fee is incidental to the debt because it is an amount that is not the principal obligation, *id.* at 5; (2) the fee is not authorized under the EFTA because fees under the EFTA must be reasonable and proportional to the cost incurred, *id.* at 8–10; (3) any fees authorized by the EFTA do not apply to CB1 because it is a merchant, not an issuer, *id.*; (3) the fee exceeds the amount authorized under the EFTA, even if it did apply to CB1, *id.*; and (4) regardless of whether the EFTA applies, the fee is contractually prohibited and violates the FDCPA, because CB1 agreed not to charge the fee with Visa and MasterCard. *Id.* at 11–12.

Plaintiffs argue that the Ninth Circuit has not addressed whether charging a fee for use of a credit card is permitted and that the only District Court within the Ninth Circuit took the minority position,

diminishing its persuasive authority. *Id.* at 12–13. They also argue that whether a fee or surcharge is voluntary is a question of fact, because for low income individuals, the inability to pay by check means there was no choice, and a credit card was the only option. *Id.* at 14.

Plaintiffs acknowledge that the misrepresentation claim under section 1692e of the FDCPA turns on the success of the claim under section 1692f. They argue that if CB1 was barred from assessing the fee, then it also misrepresented its rights in the demand letters to Plaintiffs indicating that it could add the fee to payments made by debit or credit card. *Id.* at 15.

Finally, Plaintiffs argue that they can represent a class under the MCPA because the case was filed in Federal Court. *Id.* at 15–16. They argue that, consistent with federal cases law, Rule 23 determines whether Plaintiffs can represent a class, not state law. *Id.* at 16.

In reply, CB1 argues that the fee cannot be subject to a claim under section 1692f(1) because: (1) "CB1 never claimed that Plaintiffs owed this amount nor demanded that Plaintiffs pay this amount[,]" *id.* at 9; (2) Plaintiffs do not dispute that they signed the CRA and thus agreed to the fee, *id.* at 10–11; (3) the fee is permitted by law because

the regulatory cap on interchange fees does not govern CB1 because CB1 is a merchant rather than an issuer, *id.* at 12; and (4) the Complaint does not include the basis for alleging CB1 agreed not to charge the fee, and even if it did, the Plaintiffs cannot be a third party beneficiary to any such agreements, *id.* at 13. *Id.* at 14.

Finally, CB1 argues that Plaintiffs cannot represent a class under the MCPA because the class action prohibition is so intertwined with the statute's rights and remedies that it is substantive rather than procedural, and thus Rule 23 does not apply. *Id.* at 16.

## III.  LEGAL STANDARD

Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory. *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint

must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint. *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). In *Levitt*, the Ninth Circuit summarized the test:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* (citations omitted).

## IV. DISCUSSION

### A. COUNT 1: FDCPA

The FDCPA was created to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not

competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Under the FDCPA, a claim is evaluated under the least sophisticated debtor standard, which asks whether the "least sophisticated debtor" would likely be misled by a communication from a debt collector. *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). The FDCPA is a strict liability statute, and is designed to protect all consumers, regardless of a consumer's sophistication. *Gonzales v. Arrow Fin. Services, LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011).

To allege a claim under the FDCPA, a plaintiff must establish that "(1) the plaintiff is a 'consumer'; (2) who was the object of a collection activity arising from a 'debt'; (3) the defendant is a 'debt collector'; and (4) the defendant violated a provision of the FDCPA." *Flores v. Collection Consultants of California*, 2015 WL 4254032, at *4 (C.D. Cal. Mar. 20, 2015) (citations omitted).

CB1 does not contest the first three elements outlined above, but does argue that Plaintiffs failed to adequately allege the fourth element—a violation of a provision of the FDCPA. Plaintiffs assert violations under two provisions of the FDCPA, sections 1692f(1) and

1692e(2)(B).  The Court will address each statutory subsection in turn.

1. **SECTION 1692f**

Section 1692f of the FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  It is a violation of this provision to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

a. **Incidental to the Principal Obligation**

CB1 argues that the fee at issue is not incidental to the principal obligation, but is instead a voluntary, opt-in fee, and is only imposed if the consumer chooses to pay by debit or credit card.  *ECF No. 11* at 14–15.

The Ninth Circuit has not considered whether a transaction fee, like the one at issue in this case, is permissible under the FDCPA.  One district court within the Ninth Circuit determined that a fee charged for paying a debt by credit card, rather than by other means, was not incidental to the principal obligation because such a fee is voluntary

and could be avoided. *Flores*, 2015 WL at *8–10. There, the Plaintiffs

were challenging a $5.00 convenience fee applied in connection with an

offer to settle a consumer debt at a considerable discount. *Id.* at *2. The

settlement offer was entitled "OFFER TO SETTLE AT A HUGE

REDUCTION!" and included a provision that clarified "[i]f you have any

special needs or circumstances, we may be able to accommodate them.

Please do not hesitate to call use with any questions or concerns." *Id.* In

*Flores*, the court acknowledged that cases outside of the Ninth Circuit

had concluded that similar fees were incidental to the principal

obligation and fell under the scope of the FDCPA on that basis. *Id.* But

the *Flores* court emphasized the voluntary nature and the

circumstances of the charge and found that any other result would

discourage other debt collectors from offering additional payment

options. *Id.* at *10.

The majority of courts have found that similar transaction fees are

incidental to the principal obligation, and thus fall under the scope of

the FDCPA.[3] In *Weast*, the court addressed the voluntary nature of

---

[3] *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1020 (E.D. Mo. 2015); *Quinteros v. MBI Associates, Inc.*, 999 F. Supp. 2d 434, 438 (E.D.N.Y. 2014); *Shami v. Natl. Enter. Sys.*, 2010 WL 3824151

transaction fees and found that "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute, as the latter is still an attempt to collect a fee which is prohibited by the FDCPA." *Weast*, 115 F. Supp 3d at 1023 (citing *Shami*, 2010 WL at *3–4).

The *Weast* court then addressed whether the fee violated the FDCPA if the debt collector did not receive any additional compensation from the fee because it was passed on to the third party that had imposed the fee. *Id.* at 1022. The court found that such a determination was not possible when deciding a motion to dismiss, and is more properly considered at a later stage, such as the summary judgment stage. *Id.* Indeed, many of the courts that found similar fees were incidental to the principal obligation did note that the permissibility of the fee under the FDCPA ultimately turns on whether or not the debt collector retains any portion of the fee. *See Weast*, 115 F. Supp. 3d at 1022; *Acosta v. Credit Bureau of Napa County*, 2015 WL 1943244, at *3 (N.D. Ill. Apr. 29, 2015); *Shami*, 2010 WL at *4; *Longo*,

_____

(E.D.N.Y. Sept. 23, 2010); *Longo v. Law Offices of Gerald E. Moore & Assocs., P.C.*, 2005 U.S. Dist. LEXIS 48493 (N.D. Ill. Feb. 3, 2005).

2005 U.S. Dist. LEXIS at \*13–14. In a similar line of reasoning, other courts examining transaction fees for use of a particular form of payment did not address whether the fees were incidental, but instead concluded that the fees initially fell outside the scope of the FDCPA if the fee is entirely passed on to a third party because that is not an "attempt to collect" an impermissible fee.[4]

The Court is persuaded by the majority of courts that have found a transaction fee imposed for using a certain payment method can be considered incidental to the principal obligation. The FDCPA is to be liberally construed in favor of the consumer. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006).

During oral argument, CB1 argued that the voluntary nature of the fee in *Flores* is similar to the fee at issue here. The Court disagrees. In *Flores*, the collection attempt at issue was not a demand letter for immediate payment in full to avoid a "lawsuit and associated costs," as is the case here—it was an optional settlement offer to pay off a

---

[4] *Lee v. Main Accounts, Inc.*, 125 F.3d 855 (6th Cir. 1997) (per curium, unpublished); *Mann v. Nat'l Asset Mgmt. Enters.*, 2005 U.S. Dist. LEXIS 49552 (C.D. Ill. Feb. 24, 2005); *Lewis v. ACB Bus. Services, Inc.*, 911 F. Supp. 290, 292 (S.D. Ohio 1996).

consumer debt at a significant discount, and provided that special needs or circumstances may be accommodated. *See ECF No. 12-2* at 1; *Flores*, 2015 WL at *2. *Flores* not only takes a minority position in regard to transaction fees, but the very nature of the collection activity and circumstances surrounding the fee in *Flores* distinguish it from the facts at issue here. In addition, the amount of any fee CB1 might incur as a result of accepting a payment by debit or credit card is unknown. It is not possible to determine based on the record before the Court whether any portion of the transaction fee is retained by CB1, or whether the entirety of the fee is passed on to a third party imposing the fee for use of a debit or credit card.

The Court, in construing the Complaint's factual allegations as true, finds that Plaintiffs have adequately alleged CB1 imposed an incidental fee in the payment of their debt, which falls under the scope of the FDCPA, section 1692f(1).

### b. Permitted by Law or Agreement

CB1 next argues that Plaintiffs fail to state a claim because the fee was permitted by agreement and by law. *ECF No. 11* at 11–14. CB1 argues that the EFTA permits the type of fee at issue in this case.

*Id.* at 12–14.

Here, Plaintiffs have adequately alleged that the fee was not expressly permitted by agreement. Although CB1 argues that Plaintiffs agreed to pay all collection expenses, and that such a fee is a collection expense, there is no such agreement in the record now before the Court. The Complaint alleges that the fee "was not contained in the agreements creating the debts of the named Plaintiffs or the Plaintiff class." *ECF No. 1* at 7. Additionally, the Complaint alleges that not only did the Plaintiffs not agree to the fee, but that "[u]pon information and belief, Defendant agreed with card issuers ***not*** to charge a fee to consumers for using a credit card." *Id.* at 4 (emphasis in original). At this stage, the Court must construe Plaintiffs' well-pleaded factual allegations as true. *See Levitt*, 765 F.3d at 1135. Based on the allegations in the Complaint, the Court cannot find that the fee was expressly permitted by agreement.

Next, CB1's argument under the EFTA is unpersuasive. CB1 asserts the fee is an interchange fee, but there is no evidence before the Court to determine if that is true. CB1 has not demonstrated that the 2.5% fee is proportional to any cost actually incurred for accepting a

payment with a debit or credit card, nor has it demonstrated that the EFTA affirmatively allows a merchant to pass a 2.5% transaction fee off to the consumer.  Instead, CB1 argues that the caps imposed in the EFTA do not apply because it is not an issuer.  As discussed above, whether a transaction fee of this nature is permissible turns on the nature and circumstances of the fee.  But at this stage, all inferences must be drawn in favor of the Plaintiffs and Plaintiffs need only to state enough to plausibly suggest they are entitled to relief.  *Bell A. Corp. v. Twombly*, 550 U.S. 544, 556–557 (2007).  The nature of the fee is unclear, and CB1 has not demonstrated that the EFTA affirmatively permits the fee.

Finally, although CB1 argues that Plaintiffs have failed to demonstrate the fee was unfair or unconscionable under the broader umbrella of the FDCPA, section 1692f, such a showing is adequately made by demonstrating a claim exists under section 1692f(1).  Plaintiffs did not allege a separate claim under the section 1692f umbrella. *See ECF No. 1.*  CB1 cites *Mann* for the proposition that a party must demonstrate that an opt-in fee is unfair as a threshold to stating a claim under section 1692f(1), but the court there only dismissed the

claim under the first sentence of 1692f on that basis, and applied a separate analysis to the claim under section 1692f(1). *Mann*, 2005 U.S. Dist. LEXIS at *2–4. The court in *Mann* dismissed the claim under section 1692f(1) on the basis that the $7.50 "convenience fee" for check-by-phone payment was not a "collection" within the meaning of the Act. *Id.* at *4–5. As discussed above, this Court finds the majority of courts persuasive in determining that the fee, particularly a percentage fee for use of a credit or debit card, does fall within the scope of section 1692f(1). But here, a percentage fee for use of a credit or debit card is at issue and the nature and handling of the fee is not before the court. It is undisputed that CB1 collected that percentage fee. *ECF No. 1* at 3–4. The Court took judicial notice of the "Notice(s) of Legal Action" which state that "a lawsuit … is now being instituted against you [and] …the lawsuit and associated costs may be avoided by remitting payment in full immediately!" and at the same time giving notice of the 2.5% surcharge of use of a credit or debit card. *ECF No. 12*-2. In construing the factual allegations of the Complaint as true, the Court finds that Plaintiffs have adequately alleged a claim.

Thus, for the reasons discussed above, the Court recommends that

CB1's motion to dismiss Plaintiffs' claim under the FDCPA, section 1692f(1) be denied.

## 2. SECTION 1692e(2)(B)

Under section 1692e of the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A violation of this provision includes the false representation of "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B).

CB1 argues that it did not falsely represent any right to compensation because the transaction fee was permitted by statute and authorized by agreement. *ECF No. 11* at 19–21. As discussed above, the Court cannot make these factual determinations at this stage. Additionally, Plaintiffs concede that this claim is dependent on the survival of the claim under section 1692f(1). Here, Plaintiffs have adequately alleged a claim stating that CB1 asked for, and collected, an impermissible fee. As a result, they have also adequately alleged a claim that CB1 falsely represented that it was entitled to collect the fee. In the Complaint, Plaintiffs allege that CB1 represented to Plaintiffs in

a demand letter that it could collect a 2.5% fee if the debt were paid with a debit or credit card, and that a 2.5% fee was added when Plaintiffs made payments with a debit card. *ECF No. 1* at 3; *see also ECF No. 12-2.*

Thus, the Court finds that CB1's motion to dismiss Plaintiffs' claim under the FDCPA, section 1692e(2)(B), should be denied.

### B.    COUNT 2:  MCPA CLAIM

Although CB1 argues that the MCPA claim should be dismissed for failure to state a claim, Plaintiffs have adequately alleged that they were charged a 2.5% fee, and that the fee is not legally permitted.  This claim is predicated on the same conduct at issue under the FDCPA, and as discussed above, Plaintiffs have individually stated claims.  The next question is whether these claims may proceed as a class action.

The consumer protection statutes in some states explicitly prohibit class-action treatment of claims under those statutes. Montana is one of those states.[5]  Under the MCPA, "[u]nfair methods of

---

[5] *See e.g.,* Alabama (Ala. Code § 8–19–10(f)); Georgia (Ga. Code Ann. § 10–1–399(a)); Louisiana (La. Stat. Ann. § 51:1409); Montana (MCA § 30–14–133(1)); South Carolina (S.C. Code Ann. § 39–5–140); and Tennessee (Tenn. Code Ann. § 47–18–109).

competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." MCA § 30–14–103.  The Act provides that:

> A consumer who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by 30-14-103 <u>may bring an individual but not a class action under the rules of civil procedure</u> in the district court of the county in which the seller, lessor, or service provider resides or has its principal place of business or is doing business to recover actual damages or $500, whichever is greater. An individual claim may be brought in justice's court. The court may, in its discretion, award up to three times the actual damages sustained and may provide any other equitable relief that it considers necessary or proper.

MCA § 30–14–133(1) (emphasis added).

In contrast, Rule 23 generally provides the procedure used in federal courts to determine whether an action may be brought as a class action.  Rule 23 may conflict with state statutes, like the MCPA prohibition on class actions.

In *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), the Supreme Court addressed the conflict between Rule 23 and a state statute prohibiting class action suits.  The Court held that Rule 23 preempted a New York state law prohibiting class

actions in cases seeking penalties or statutory minimum damages.

Although five Justices joined in the judgment, there is no majority

opinion for the Court. Instead, there is a plurality decision, with a

concurring opinion that joins the plurality in part. Based on the split

nature of the decision, there is disagreement regarding which approach

outlined by the Court is binding. The Supreme Court has found that

"[w]hen a fragmented Court decides a case and no single rationale

explaining the result enjoys the assent of five Justices, the holding of

the Court may be viewed as that position taken by those Members who

concurred in the judgments on the narrowest grounds." *Marks v. U.S.*,

430 U.S. 188, 193 (1977) (internal quotation omitted). But "[t]his

standard requires that the narrowest opinion is actually the 'logical

subset of other broader opinions,' such that it 'embod[ies] a position

implicitly approved by at least five Justices who support the judgment.'"

*Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (*quoting King v.

Palmer*, 950 F.2d 771, 781 (D.C.Cir.1991)(en banc)) (alteration in

original).

Many courts have interpreted the concurring opinion in *Shady*

*Grove*, to be the narrowest grounds, and thus the controlling approach.[6]

Other courts have disagreed, and applied pre-*Shady Grove* approaches.[7]

The Eleventh Circuit found, in addressing the Alabama Deceptive

Trade Practices Act ("ADTPA"), that it did not matter which approach

controls because there was no meaningful distinction between the law

at issue in *Shady Grove,* and the prohibition against class actions found

in the ADTPA.  *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d

1331, 1335 (11th Cir. 2015).  Thus, the Eleventh Circuit found that Rule

23 applied instead of the class action prohibition. *Id.*

The conflict between MCPA class action prohibition and Rule 23

has not been specifically addressed by any courts sitting in Montana,

---

[6] *See e.g., Friedman v. Dollar Thrifty Automotive Group, Inc.*, 2015 WL 8479746 (D. Colo. Dec. 10, 2015); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014); *Phillips v. Philip Morris Companies Inc.*, 290 F.R.D. 476 (N.D. Ohio 2013); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390 (S.D.N.Y. July 18, 2011); *Tait v. BSH Home Appliances Corp*., 2011 WL 1832941, at *8-9 (C.D. Cal. May 12, 2011); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. March 11, 2011); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d 670 (E.D. Pa. Dec. 22, 2010); *Bearden v. Honeywell Intern. Inc*., 2010 WL 3239285 (M.D. Tenn. Aug. 16, 2010).

[7] *See e.g., Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours and Co*., 2015 WL 4755335, at *21 (N.D. Cal. Aug. 11, 2015); *In re Hydroxycut Mktg. and Sales Practices Litig.*, 299 F.R.D. 648, 653 (S.D. Cal. 2014); *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *20 (N.D. Cal. Oct. 2, 2014).

nor by the Ninth Circuit. It has been addressed, however, by a few federal district courts—though the results have been inconsistent. *Compare In re Hydroxycut Mktg. and Sales Practices Litig.*, 299 F.R.D. 648, 653 (S.D. Cal. 2014) *with In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1163-64 (D. Minn. 2014).

In *Hydroxycut*, the district court applied the pre-*Shady Grove* approach to determine whether the application of a federal rule violates the Rules Enabling Act. This approach looks to whether the "application 'affects only the process of enforcing litigants' rights and not the rights themselves.' " *Freund v. Nycomed Amersham*, 347 F.3d 752, 762 (9th Cir. 2003) (quoting *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 8 (1987)). Other courts in the Ninth Circuit have similarly declined to find the concurrence in *Shady Grove* to be the controlling approach and found that similar class action prohibitions are procedural in nature. *See Los Gatos Mercantile, Inc.*, 2015 WL 4755335, at *21; *In re Lithium Ion Batteries Antitrust Litig.*, 2014 WL 4955377, at *20 n.20; *In re Hydroxycut Mktg. and Sales Practices Litig.*, 299 F.R.D. at 653; *In re Optical Disk Drive Antitrust Litig.*, 2012 WL 1366718, at *8 (N.D. Cal. Apr. 19, 2012).

The Court is not persuaded that the concurrence in *Shady Grove* is the narrowest grounds. Part of the plurality opinion, written by Justice Scalia, is joined by five Justices. But the concurring opinion as to the second portion of the stated test under the Rules Enabling Act is only that of Justice Stevens. It cannot be the logical subset of the broader opinions because it is joined by any other Justice. *See Lair*, 697 F.3d at 1205. Instead, the Court will look only to the part of Justice Scalia's opinion that is joined by five Justices, and the pre-*Shady Grove* approach in the Ninth Circuit, to determine whether application of a federal rule violates the Rules Enabling Act.

Here, application of Rule 23 affects only the process of enforcing the litigants' rights. Although the same MCPA provision that prohibits class actions also provides for minimum statutory damages, the prohibition only alters the procedural means by which that remedy may be pursued. The class action prohibition itself does not add, subtract, or define any of the necessary elements of the claim. *See Freund*, 347 F.3d at 762. Each individual could proceed with a suit under the MCPA and receive the same remedy regardless of whether it is brought individually or as part of a class action. In federal courts, "Rule 23

permits all class actions that meet its requirements, and a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements." *Shady Grove*, 559 U.S. at 401.

For these reasons, the Court finds that the MCPA class action prohibition is procedural in nature and Rule 23 applies to determine whether a claim may be brought as a class action. The Court also finds that Plaintiffs have adequately stated a claim under the MCPA. Thus, the Court recommends the motion be denied as to the MCPA claim.

## C.   <u>MOTION TO STRIKE</u>

CB1 also argues that the Court should strike paragraphs 43 through 49 of the Complaint because Montana law prevents Plaintiffs from representing a class of individuals under the MCPA. *ECF No. 11* at 23–24. But, for the reasons discussed above, the Court finds that the MCPA class action prohibition does not apply in federal court. As a result, the Court recommends the request to strike paragraphs 43 through 49 be denied.

## V.   <u>CONCLUSION</u>

IT IS RECOMMENDED that CB1's motion to dismiss and strike

class allegations (*ECF No. 10*) be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived. *See Local Rule 72.3.*

DATED this 8th day of April, 2016.

/s/ *Carolyn S. Ostby*
United States Magistrate Judge